**Buchanan Ingersoll ∧ Rooney** PC

Attorneys & Government Relations Professionals

Christopher J. Dalton
(973) 424-5614
christopher.dalton@bipc.com

550 BROAD STREET, SUITE 810
NEWARK, NEW JERSEY 07102-4582

Telephone: (973) 273-9800
Facsimile:  (973) 273-9430

www.bipc.com

August 4, 2009

**VIA ECF**
Hon. Patty Shwartz, U.S.M.J.
United States District Court
for the District of New Jersey
United States Post Office & Courthouse
Federal Square
Newark, New Jersey 07101

Re:   Marcus v. BMW of North America, LLC et al
      Civil Action No. 08-5859 (KSH/PS)
      *Unresolved Discovery Disputes*

Dear Judge Shwartz:

This firm represents defendant BMW of North America, LLC ("BMW NA") in the above-noted action.  This joint letter is submitted by counsel for BMW NA and counsel for Plaintiff, pursuant to ¶9 of the Court's April 3, 2009 Pre-Trial Scheduling Order to bring to the Court's attention unresolved discovery disputes by August 4, 2009.  Counsel conferred on several occasions including July 15, 2009 and July 30, 2009, but were unable to resolve several discrete disputes, which are set forth below.

**Background**

Plaintiff, a New York resident, alleges that he leased a new 2007 BMW 328ci convertible with Bridgestone Turanza run-flat tires from Prestige BMW, an authorized BMW dealership located in Ramsey, New Jersey. (Amended Complaint ¶ 11, 28).  Plaintiff asserts that on four occasions between August 17, 2007 and August 25, 2008, the Tire Pressure Monitoring System ("TPMS") warning light illuminated indicating a total or substantial loss of pressure in one of his vehicle's run-flat tires, each time requiring him to take his vehicle to a BMW Center.  On two of those occasions his tires simply needed more air and the TPMS was reset, for which he was not charged; but on two other occasions, his tires were damaged and needed to be replaced, for which he was charged.  (Id., ¶31-35).

Plaintiff claims that Bridgestone run-flat tires (the "Tires") are "defective and are prone to pop, bubble or otherwise fail from the smallest bumps on a normal road, and they do so often." (Amended Complaint, ¶ 2).  Plaintiff alleges that Bridgestone run-flat tires are "also susceptible to other catastrophic failures that were not an issue with radial tires." (Amended

Hon. Patty Shwartz, U.S.M.J.
August 4, 2009
Page 2

Complaint, ¶ 3).  Plaintiff further alleges that the Tire Pressure Monitoring System in his BMW vehicle – and, indeed, all BMW vehicles – was faulty.  (Amended Complaint, ¶¶ 27, 32, 34-35).

Plaintiff requests a nationwide class for his claim under the Magnuson-Moss Warranty Act, and a single-state (New Jersey) sub-class for his remaining claims under the law of New Jersey, on behalf of himself and all owners and lessees of any model year or style 2006, 2007, 2008 or 2009 BMW vehicle (the "Vehicles") equipped with any type of Bridgestone run-flat tire (the "Tires").  Plaintiff asserts against BMW of North America, LLC ("BMW NA") claims for breach of implied warranty in violation of the Magnuson-Moss Warranty Act (Count I); violation of the New Jersey Consumer Fraud Act (Count III); breach of express warranty (Count V); breach of implied warranty (Count VI); breach of contract (Count VIII); and breach of the implied covenant of good faith and fair dealing (Count IX).

**Unresolved Discovery Issues**

**A.      BMW NA's Discovery Demands to Plaintiff**

**1.      BMW NA's Requests for Production Nos. 29 & 30**
**BMW NA's Interrogatories Nos. 5 & 6**

Request No. 29 sought "All documents identifying, supporting, referring to, reflecting, or otherwise relating to the allegation in Paragraph 38 of the Amended Class Action Complaint that 'the Tires are deficient in comparison to those of other manufacturers: on information and belief, run-flat tires made by Continental (which also uses a stiffened sidewall for support in the event of a flat) and Pirelli do not suffer catastrophic failures and flats at the same high rate as the Tires.'"  Interrogatory No. 5 similarly asked for all facts supporting the allegations in Paragraph 38 of the Amended Complaint.

Request No. 30 sought "All documents identifying, supporting, referring to, reflecting, or otherwise relating to the allegation in Paragraph 39 of the Amended Class Action Complaint that the 'defects in the Tires are not limited to one type of Tire manufactured by the Bridgestone Defendants, but rather are inherent in, at a minimum, the Turanza, Potenza and Dueler tires manufactured by the Bridgestone Defendants…'"  Interrogatory No. 6 similarly asked for all facts supporting the allegations in Paragraph 39 of the Amended Complaint.

**Plaintiff's Position**:

Plaintiff has agreed to respond to BMW NA's Requests for Production Nos. 29 & 30, as well as BMW NA's Interrogatories Nos. 5 & 6 and Plaintiff has provided all responsive information in Plaintiff's possession.  BMW NA's arguments concerning the purported "insufficiency" of the content of Plaintiff's responses are not a discovery dispute, but rather an attempt to argue the merits of the case and the sufficiency of Plaintiff's proof, prior to the completion of discovery and in an inappropriate forum.  Plaintiff submits that the documents produced are sufficient to support Plaintiff's "information and belief" allegations in the

Hon. Patty Shwartz, U.S.M.J.
August 4, 2009
Page 3

Complaint and Plaintiff will make that showing at the appropriate time.  Accordingly, Plaintiff submits that there is no controversy with regard to Plaintiff's discovery responses.

**BMW NA's Position**:

Plaintiff refused to respond to Requests 29 and 30 on various grounds, including that each called for documents "relating to Plaintiff's contentions prior to the completion of sufficient discovery" or "relating to Plaintiff's experts prior to the time set for expert disclosure…"

Plaintiff refused to answer Interrogatories 5 and 6 on similar grounds.  However, in response to Interrogatory 6 – regarding the allegation that the alleged defect exists across all Bridgestone tires – Plaintiff did point to some of the documents he produced, including repair records for his Model Year 2007 BMW 3 Series vehicle with Bridgestone Turanza run-flat tires, as well as printouts of largely anonymous postings on third-party websites.

These Document Requests and Interrogatories sought from Plaintiff all documents and facts supporting the core allegations in his Amended Complaint:  That Bridgestone run-flat tires are deficient in comparison to other manufacturers' run-flat tires and that the purported defect exists across *all* Bridgestone run-flat tires including Turanza, Potenza, and Dueler models.

Plaintiff's responses, *vel non*, to these Requests and Interrogatories are insufficient.  "Parties must provide true, explicit, responsive, complete, and candid answers to interrogatories. If a party is unable to supply the requested information, the party may not simply refuse to answer, but must state under oath that he is unable to provide the information and set forth the efforts he used to obtain the information." *Hansel v. Shell Oil Corp.*, 169 F.R.D. 303, 305 (E.D. Pa. 1996) (citations omitted).  In *Hansel*, the plaintiff asserted that it could not answer discovery relating to the identity of  entities to whom Shell – as specifically asserted in the plaintiff's Complaint – allegedly provided preferential pricing in violation of Robinson-Patman Act.  The District Court held that, in signing the Complaint, counsel had represented to the court "that there was 'evidentiary support' for those allegations. *See* Fed. R. Civ. P. 11(b)( 3). ***The plaintiffs were required to supply at least that 'evidentiary support' in their answers; if they did not possess complete information, they were required to disclose the information possessed and specifically detail under oath the efforts they made to obtain the rest…***"  169 F.R.D. at 306 (other citation omitted) (emphasis added).

Consequently, if Plaintiff here has facts or documents to support the factual allegations in his Amended Complaint, he must produce them.  If he does not have facts or documents to support the factual allegations in his Amended Complaint, he should say so.  And, if he does not have facts or documents to support the factual allegations in his Amended Complaint, he should voluntarily withdraw them or they should be stricken.

Indeed, Plaintiff's failure or refusal to respond to discovery seeking the facts and documents supporting the broad-brush factual allegations in his Amended Complaint borders on the sanctionable.  *See* Fed. R. Civ. P. 11(b) (3) ("By presenting to the court a pleading . . . an

Hon. Patty Shwartz, U.S.M.J.
August 4, 2009
Page 4

attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances… the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery")[1]; *see also Geisinger Medical Center v. Gough*, 160 F.R.D. 467, 469 (M.D. Pa. 1994) (Rule 11 does not give parties "a general license to plead a claim first and then allow[] them to conduct the necessary investigation in support of it… Tolerance of factual contentions in initial pleadings … does not relieve litigants from the obligation to conduct an appropriate investigation into the facts that is reasonable under the circumstances; it is not a license to join parties, make claims or present defenses without any factual basis or justification") (quotation omitted).

Plaintiff must be compelled to respond to the Requests and Interrogatories or, if he has no facts to support his allegations, he must withdraw them or they should be stricken.

**B.      Plaintiff's Discovery Demands to BMW NA**

**1.      Plaintiff's Requests for Production Nos. 4 and 12**

Request No. 4 sought "All documents concerning consumer complaints regarding the defects in the Tires as alleged in the Complaint, including but not limited to popping, bubbling, susceptibility to punctures, and inability to be repaired after puncture. Your response shall include, without limitation, documents evidencing the complaint, internal communications regarding the complaint, communications between You and any other entity (including but not limited to the Bridgestone Defendants) regarding the complaint, and documents evidencing Your response to the complaint, if any."

Request No. 12 sought similar documents, relating to consumer complaints about the Tire Pressure Monitoring System ("TPMS").

**BMW NA's Position**:

BMW NA objected to these requests on several grounds, including overbreadth, undue burden, and for the grounds set forth in BMW NA's pending Motion to Dismiss Counts I, V, VI, VIII, and IX of Plaintiff's Amended Class Action Complaint and to Strike Plaintiff's Class Action Allegations.

BMW NA did produce information relating to Model Year 2007 BMW 3 Series Vehicles, such as Plaintiff leased, from New Jersey consumers such as Plaintiff seeks to represent.

---

[1] While Plaintiff's allegations comparing Bridgestone run-flat tires to those of other manufacturers was made "on information and belief," his allegation that the purported defect exists across all types of Bridgestone run-flat tires was not so qualified.

Hon. Patty Shwartz, U.S.M.J.
August 4, 2009
Page 5


Plaintiff here seeks a nationwide class under the Magnuson Moss Warranty Act and a New Jersey state sub-class for his remaining claims (breach of express and implied warranty; breach of contract and implied covenant of good faith and fair dealing; and violation of the New Jersey Consumer Fraud Act).[2]  Plaintiff's proposed classes include all BMW vehicles for model years 2006, 2007, 2008, and 2009.

BMW NA produced approximately 250 pages of documents relating to consumer inquiries regarding the Tires and/or the TPMS, limited to Model Year 2007 BMW 3 Series Vehicles and New Jersey consumers, where the consumer inquired about the TPMS or about the Tires' "popping, bubbling, susceptibility to punctures, and inability to be repaired after puncture."[3]

As the Court knows, there is currently pending a fully briefed motion to strike Plaintiff's overbroad class allegations.  Plaintiff's proposed class encompasses four model years and ten different types of BMW vehicles (plus multiple sub-types) with three different types of Bridgestone tires.[4]  Plaintiff thus seeks to represent owners and lessees with *different* model year vehicles, *different* types of vehicles, and *different* types of Bridgestone run-flat tires.   Yet Plaintiff's Amended Complaint contains factual allegations relating *solely* to *his* experiences with a Model Year 2007 BMW 3 Series vehicle equipped with Bridgestone Turanza run-flat tires.  And, as discussed above, Plaintiff's discovery responses make clear that Plaintiff has *no facts* to support his allegation that *all* BMW vehicles for *all* of the proposed model years and *all* Bridgestone run-flat tires are "defective."

While BMW NA did provide documents responsive to these Requests – limited to the model year and style BMW vehicle that Plaintiff has and to consumers in New Jersey, as Plaintiff seeks to represent – even doing that was a time consuming and difficult process.

Specifically, BMW NA's customer relations records are maintained in a proprietary database.   These records are generally coded for vehicle parts and components, such as "steering," "brakes," "electrical," "wheels and tires," etc.  These general codes can then be sub-

---

[2] Although Plaintiff purchased his vehicle from a New Jersey BMW Center, he is a New York resident and, therefore, a significant choice-of-law issue arises with respect to his state-law claims.  A similarly significant choice-of-law issue arises with regard to Plaintiff's claim for breach of implied warranty under the Magnuson-Moss Warranty Act.  Magnuson-Moss "imports" the substantive state law of implied warranty and, therefore, the proposed nationwide class would require analysis and/or application of the laws of potentially fifty-one jurisdictions.  While these may be issues for a different motion, they are nonetheless relevant to the Court's consideration of the appropriate scope of discovery.

[3] Plaintiff alleges that the TPMS light on his Model Year 2007 BMW 3 Series Vehicle illuminated four times over the course of 14 months of service, requiring him to visit a BMW Center.  On two such occasions, his tires simply needed air and the TPMS was reset, without charge; on two other occasions, his tires were damaged and required replacement, for which he was charged.  (Amended Complaint, ¶¶ 29-34).

[4] Bridgestone is not the only supplier of original equipment tires for BMW brand vehicles; other suppliers include Continental, Pirelli, Michelin, Uniroyal, and Goodyear.

Hon. Patty Shwartz, U.S.M.J.
August 4, 2009
Page 6

coded into various areas; for example, the general code for "Tires" is sub-coded for types, manufacturer/brand, rim, etc.  However, the coding process has nothing to do with lawsuits; there simply is no code (or the ability to search automatically) for specific customer concerns like those alleged in this lawsuit.  So, for example, a customer inquiry about "popping" or "bubbling" of a Bridgestone run-flat tire could be coded in several fields, such as the general "Tires" field, or a "Run-Flat Tires" sub-field, or "Bridgestone Tires" sub-field.  Consequently, BMW NA must review all customer contacts coded for "Tires," not only "Run Flat Tires" or "Bridgestone Tires," since Bridgestone also makes non-run-flat tires, and other manufacturers also make run-flat tires.  Nor is there a code for "TPMS False Positive" such as Plaintiff alleges; therefore, the customer inquiries regarding the TPMS also must be retrieved *en masse*.

Consequently, to ensure that the documents BMW NA has been producing are actually responsive to Plaintiffs' requests, BMW NA's employees have manually reviewed the materials which have been retrieved from its customer relations database.  In addition, because these records contain sensitive and confidential personal information, BMW NA has redacted such information to protect those customers' privacy interests.  This process has been lengthy and very time consuming.  Reviewing and producing the customer relations information just for New Jersey consumers with Model Year 2007 3 Series vehicles took the BMW NA employee principally responsible for compiling discovery responses approximately 20 hours, which had to be spread over two weeks (as the employee had to work on other matters).   Other employees of BMW NA have also been involved in collecting and responding to these requests, such as customer service operations employees who have had to respond to inquiries and retrieve records.  Most particularly, these employees have engaged in the task of setting the filters on the customer service database to sort through and extract the potentially relevant records, which takes about one to two hours per state.

This task is further complicated by the fact that not every vehicle style (1 Series, 3 Series, 5 Series, 6 Series, 7 Series, M Series, Z Series, X3 Sport Activity Vehicle, X5 Sport Activity Vehicle, and X6 Sport Activity Vehicle) for the years encompassed in the proposed class (2006, 2007, 2008, 2009) was equipped with run-flat tires, whether standard or as an option.  Additionally, as previously noted, Bridgestone is not the only tire manufacturer supplying run-flat tires for use as original equipment on BMW vehicles.  Indeed, in many cases, even the same model year and style vehicle may be equipped with tires from several different manufacturers.  For example, as BMW NA stated in response to Plaintiff's Interrogatory No. 6, Model Year 2007 BMW 3 Series vehicles, like Plaintiff's, may have been equipped with tires manufactured by Bridgestone, Continental, Michelin, Uniroyal, or Pirelli.  (And, as discussed below, BMW NA noted in response to Plaintiff's Requests for Production Nos. 9 and 10 that it could not state precisely how many Model Year 2007 BMW 3 Series vehicles, like Plaintiff's, were equipped with Bridgestone run-flat tires.)

Consequently, while the customer service system can be filtered by vehicle style, model year, and home state of the customer, the filters cannot sort for inquiries relating solely to Bridgestone run-flat tires, let alone inquiries concerning "popping" or "bubbling" of Bridgestone

Hon. Patty Shwartz, U.S.M.J.
August 4, 2009
Page 7

run-flat tires as alleged in the Amended Complaint.  A manual review of each and every customer inquiry relating to "tires" (or TPMS) must still be conducted.

Thus, to respond to these requests for all 50 states (plus Washington DC) for the ten vehicle styles for four model years – a period during which BMW NA distributed, in total, more than 910,900 vehicles (through June 30, 2009) – could easily take tens of thousands of hours – or more.[5]

Moreover, if BMW NA's motion to dismiss Plaintiff's Magnuson-Moss claim is successful, the only claim seeking a nationwide class would be eliminated and, therefore, any discovery relative to states other than New Jersey would be moot.  Similarly, if BMW NA's motion to strike Plaintiff's overbroad class allegations succeeds, discovery relating to model years and vehicle styles other than Model Year 2007 BMW 3 Series vehicles would similarly be moot.  But if BMW NA is required to engage in this extraordinarily broad and burdensome discovery, which later becomes moot, the substantial time and significant expense incurred will never be recouped.

Federal Rule of Civil Procedure 26(c)(1) provides that the "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  BMW NA respectfully submits that complying with the discovery sought in Plaintiff's Requests Nos. 4 and 12 would be oppressive, unduly burdensome, and hugely expensive.

BMW NA recognizes that the party seeking a protective order bears the burden of demonstrating good cause.  *Pansy v Borough of Stroudsburg*, 23 F.3d 772, 786 (3rd Cir. 1994) (citing Fed. R. Civ. P. 26(c); *Smith v. Bic Corp.*, 869 F.2d 194, 199 (3rd Cir.1989)).  A protective order may issue where the party seeking the protective order shows good cause by demonstrating a particular need for protection based upon specific examples.  *Glenmede Trust Co.  v. Thompson*, 56 F.3d 476, 483 (3rd Cir. 1995) ("'Good cause' is established when it is specifically demonstrated that disclosure will cause a clearly defined and serious injury") (citations omitted); *Cippilone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3rd Cir. 1986) ("broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test") (citations omitted).

The discovery sought in Requests Nos. 4 and 12 is clearly and demonstrably oppressive, unduly burdensome, and extraordinarily expensive, as it will potentially require tens of thousands of hours to respond and will require the review of potentially tens if not hundreds of thousands of documents.  Courts have precluded even less intrusive discovery.  *See*, *e.g.*, *United Steelworkers of Am. v. Gov't of the Virgin Islands*, 2008 WL 5101681 (D. Virgin Islands Dec. 1,

---

[5] Responding to these Requests for one state, one vehicle style, and one model year took 20  hours.  Assuming 20 hours per state per model year per vehicle, a reasonable estimate would be approximately 40,000 hours (20 hours x 4 model years x 10 models x 50 states, less the 20 hours already expended to compile information for Model Year 2007 BMW 3 Series vehicles for New Jersey).  Even if BMW NA assigned 10 employees to conduct such a review, it would still take approximately two years for them to do so.

Hon. Patty Shwartz, U.S.M.J.
August 4, 2009
Page 8

2008) (quashing subpoena pursuant to Rule 45 and Rule 26(c)(1), where subpoena sought "documents related to over 400 government employees with fifteen (15) different government agencies for a six-year time period" which the defendant calculated to include over 62,000 documents, at a minimum).

**Plaintiff's Position**:

BMW NA objected to nearly all of Plaintiff's document requests and interrogatories "on the grounds set forth in BMW NA's pending Motion to Dismiss Counts I, V, VI, VIII, and IX of Plaintiff's Amended Class Action Complaint and to strike Plaintiff's Class Action Allegations," among other grounds.  In other words, BMW NA is responding to these requests as if its motion to strike Plaintiff's class allegations has already been granted and has agreed to provide documents and interrogatory responses concerning only some of the Vehicles that are the subject of this action, namely, 3-Series Vehicles purchased or leased by New Jersey consumers in the year 2007.

Plaintiff believes BMW NA's objection on the basis of its pending motion is wholly improper and is a *de facto*, unilaterally imposed discovery stay.  On March 27, 2009, BMW NA filed its motion to dismiss most counts of plaintiff's complaint and to strike plaintiff's class allegations.  At the initial scheduling conference held on April 3, 2009, Your Honor expressly declined BMW NA's request to stay discovery pending the Court's ruling on BMW NA's motion to dismiss and motion to strike.  Despite the Court's directive that all discovery should proceed, BMW NA has now unilaterally determined that discovery should proceed as if its motion to strike has been granted.  BMW NA has provided no support for its position that a defendant can limit discovery on grounds set forth in pending motion papers.[6]

Plaintiff's motion to certify a class, as the class is defined the Complaint, currently is due to be filed on November 22, 2009 and class certification discovery is scheduled to end on September 1, 2009.  There is no indication that a decision will be rendered on the motion to strike before those deadlines pass.  Without production of documents and information regarding the entire class of consumers on behalf of which this case was filed, plaintiff will be severely prejudiced in his ability to move for class certification.

In an effort to compromise and to address BMW NA's claims of burden, plaintiff has agreed to limit his requests, at this time.  After the parties' July 15, 2009 "meet and confer," and at BMW NA's request, Plaintiff provided BMW NA with a list of narrowed discovery requests that included Document Requests Nos. 4, 9, 10, and 12, as well as two other document requests

---

[6]     In those motion papers, at Argument Section F, Plaintiff established that a proposed class representative need not have purchased every product in a defective product line distributed by one manufacturer.  Plaintiff further established that a motion to strike class allegations is generally considered to be a drastic and premature solution to a problem that BMW NA has not even shown exists in this case.

Hon. Patty Shwartz, U.S.M.J.
August 4, 2009
Page 9

not pertinent here.[7]   BMW NA has refused to produce documents responsive to these four requests.  BMW NA's production of documents concerning 3-Series Vehicles purchased or leased by New Jersey consumers in the year 2007 has been an extremely small production and BMW NA appears to have had no problem gathering and producing those documents within the short time frame established by the Court.  BMW NA cannot support its assertion that producing that same limited group of documents for consumers in other states, all of whom bought or leased Vehicles with one of only three types of tires at issue, would be unduly burdensome.

Further, any burden must be weighed against the severe prejudice to plaintiff if BMW NA effectively is permitted to impose its own discovery stay.  Plaintiff respectfully submits that these documents are necessary to Plaintiff's anticipated motion for class certification, and should be produced promptly.

Moreover, this is the first time BMW NA offered an explanation as to why it has refused to produce documents.  Despite two "meet and confers," BMW NA *never* informed Plaintiff of its purported burden and the work required of its employees, and never offered to even work toward a compromise.  Instead, BMW NA flatly refused to produce documents with no explanation.  The Local Rules of this Court, and the Federal Rules of Civil Procedure, require more.

BMW NA's sections of this letter show that many compromises were possible and could have occurred had BMW NA cared to "confer" with Plaintiff.  BMW NA admits that it has a section of its consumer complaint database titled "Tires" which is then sub-coded with "run-flat tires," and "Bridgestone."  Rather than having BMW NA's own employees spend their time searching through this database and sorting out only documents concerning 2007 3-Series Vehicles, BMW NA could have discussed these databases with Plaintiff and Plaintiff could have reviewed the documents or an index to determine what should be produced.  Rather than do this, BMW NA sent its own employees off to look for documents in databases which appear to have initially covered all Vehicles, and had its employees take from those databases documents concerning only model year 2007 3-Series Vehicles.  BMW NA created the work for itself.

Notably, the one case BMW NA cites for the proposition that Plaintiff's discovery is somehow overly burdensome only supports Plaintiff's position.  There, the Court quashed a subpoena served upon a party to the case because the subpoena, issued on November 20, required the production of approximately 62,000 pages of documents by December 4.  In quashing the subpoena, the court declined to issue a protective order, stated that the documents sought were relevant, and ordered the parties to meet and confer to devise a way for the information to be exchanged.  *United Steelworkers of Am. v. Gov't of the Virgin Islands*, 2008 WL 5101681 (D. Virgin Islands Dec. 1, 2008).

---

[7]      Plaintiff submitted these narrowed requests without waiving Plaintiff's other discovery requests and on the understanding that Plaintiff will renew those requests if the Court decides in Plaintiff's favor on BMW NA's motion to dismiss and strike class allegations.

Hon. Patty Shwartz, U.S.M.J.
August 4, 2009
Page 10

2.      **Plaintiff's Requests for Production Nos. 9 and 10**

These Requests sought "Documents sufficient to determine the number of consumers that leased Vehicles with the Tires. Your response shall include, without limitation, consumers whose leases were assigned or otherwise transferred to BMW NA, BMW Financial, and/or FSVT" (Request No. 9) and "Documents sufficient to determine the number of consumers that purchased Vehicles with the Tires" (Request No. 10).

**BMW NA's Position**:

BMW NA objected to these requests on several grounds, including overbreadth, undue burden, and for the grounds set forth in BMW NA's pending Motion to Dismiss Counts I, V, VI, VIII, and IX of Plaintiff's Amended Class Action Complaint and to Strike Plaintiff's Class Action Allegations.

Notwithstanding its objections, BMW NA did produce information relating to the number of Model Year 2007 BMW 3 Series Vehicles, such as Plaintiff's, that were sold or leased to New Jersey consumers, such as Plaintiff seeks to represent, and were equipped with some type of run-flat tire. However, BMW NA specifically noted that the information available to it does not permit it to identify how many of such vehicles were equipped with *Bridgestone* run-flat tires.

Thus, BMW NA provided information and stated in its answers that it does not know how many vehicles were leased or sold with Bridgestone run-flat tires. Consequently, even if the information were relevant and the request not overbroad and unduly burdensome, BMW NA would not be able to answer any more fully than it already has.

First, BMW NA does not have to answer the questions Plaintiff is asking. As BMW NA stated in its response to Plaintiff's Requests Nos. 9 and 10, BMW NA ***cannot*** determine precisely how many of each model year and style vehicle was equipped with Bridgestone run-flat tires. While compiling the number of vehicles equipped with *some* type of run-flat tire would be somewhat less arduous than compiling the information sought in Requests Nos. 4 and 12, BMW NA cannot identify how many vehicles were equipped with any particular manufacturers' tires. BMW NA does not have that information. Rather, that information is only available from the manufacturers of the vehicles or the owners or lessees themselves.

Second, the only thing BMW NA could do – after a significant amount of effort – would be to determine how many vehicles (of model years and styles *unlike* Plaintiff's) had run-flat tires as original equipment (which may, or may not, have been Bridgestone tires). But even to do this is unduly burdensome. BMW NA would be required to determine, on a model-year by model-year, and vehicle-style by vehicle-style basis, which vehicles may have been equipped with run-flat tires. Not every style of vehicle in the BMW family of vehicles was equipped with run-flat tires, either as standard equipment or as an option, in each of the model years encompassed in Plaintiff's proposed class.

1017121v5

Hon. Patty Shwartz, U.S.M.J.
August 4, 2009
Page 11

As noted above, Bridgestone is not the only supplier of tires for BMW vehicles; rather, the vehicles' manufacturers equipped the vehicles with run-flat tires from several different manufacturers. Thus, even if BMW NA was able eventually to determine how many of the approximately 910, 900 vehicles it distributed in model years 2006, 2007, 2008, and 2009 (through June 30, 2009) were equipped with run-flat tires, it still cannot determine how many of those vehicles were equipped with *Bridgestone* run-flat tires, the only information Plaintiff seeks.

These Requests, like Requests Nos. 4 and 12, seek information relating to claims this Plaintiff cannot pursue on behalf of people he cannot represent. Responding to these requests – even to determine how many vehicles had *some* manufacturers' run-flat tires – will impose on BMW NA significant undue burden, and will *not* yield the information Plaintiff seeks.

Consequently, BMW NA submits that it should not be required to respond further to Requests Nos. 9 and 10.

**Plaintiff's Position:**

Plaintiff incorporates herein his arguments with respect to Document Requests Nos. 4 and 12. BMW NA never mentioned these issues to Plaintiff; had it done so a compromise could have been worked out.

Moreover, the information BMW NA has already produced concerning model year 2007 3-Series Vehicles purchased or leased in New Jersey amounts to *five pages* in total. These five pages appear to be summaries that were printed after a user entered information into six data fields including the name of the state, year and vehicle type. BMW NA produced these documents despite its concern that it could not determine whether each Vehicle was equipped with the Tires or some other brand. Plaintiff is entitled to this information, and BMW NA has no right to withhold it.

**3.      Plaintiff's Request for Production No.30**

This Request sought "Documents sufficient to ascertain the terms of a standard franchise agreement entered into between BMW and BMW dealers."

**BMW NA's Position:**

BMW NA objected to this Request on several grounds, including overbreadth, undue burden, irrelevance, and for the grounds set forth in BMW NA's pending Motion to Dismiss Counts I, V, VI, VIII, and IX of Plaintiff's Amended Class Action Complaint and to Strike Plaintiff's Class Action Allegations.

BMW NA fails to see the relevance of its confidential franchise agreement. Plaintiff's Amended Complaint  contains a single allegation – made solely on information and belief – relating to BMWN NA's franchise agreements, asserting that the agreements "are so strict as to

Hon. Patty Shwartz, U.S.M.J.
August 4, 2009
Page 12

require BMW dealers to obtain BMW's [sic] permission to make decisions on internal matters, such as changes in personnel at the dealership…" (Amended Complaint, ¶ 41). Even assuming its franchise agreements were as Plaintiff contends, BMW NA cannot understand how Plaintiff's review of its franchise agreement will support Plaintiff's claims for breach of warranty, breach of contract, and consumer fraud against BMW NA. The franchise agreement is wholly irrelevant to such claims.

Plaintiff's brief in opposition to BMW NA's Motion to Dismiss appears to assert that the franchise agreements make BMW Centers (dealerships) the *de facto* agents of BMW NA. (Opp. Br. at 27). Yet Plaintiff cites no case law supporting the assertion that an independently owned and operated motor vehicle franchisee can somehow act as the binding agent of a distributor and thereby establish "indirect" privity for breach of contract purposes. And, as set forth in BMW NA's reply brief, the only case Plaintiff does cite for his contention that privity is not required for a breach of contract claim – *Payne v. Fujifilm USA*, 2007 WL 4591281 (D.N.J. Dec. 28, 2007) – actually stands for the proposition that privity of contract is not required to pursue a *tort* claim. (Rep. Br. at 11-12).

Beyond this lack of relevance is the fact that BMW NA's franchise agreement is highly proprietary and confidential. Like many franchisors, BMW NA seeks to protect from disclosure to third parties the contents of its franchise agreements, as the agreements may provide competitors with insight into BMW NA's franchising operations. The highly confidential nature of the franchise agreement, combined with its lack of relevance, militates against its production.

BMW NA should not be required to produce its franchise agreement.

**Plaintiff's Position:**

BMW NA's objections to this request are without basis. BMW NA complains about the confidential nature of its franchise agreements, despite the governing Discovery Confidentiality Order that was drafted by counsel for BMW NA. BMW NA objects because it "fails to see" the relevancy of its franchise agreements, which is a determination BMW NA is not entitled to make. *Hall v. Harleysville Ins. Co.*, 164 F.R.D. 406, 409 (E.D. Pa. 1996) (Defendant "was under a duty to answer completely and not make its own determinations that the allegedly mistaken receipt of credit reports was irrelevant to this litigation.").

Moreover, relevance is broadly construed. *Id.* at 407. Here, the Complaint alleges that BMW NA knew of the defects in the Tires in part from its dealers, whom Plaintiff believes were required to report recurring defects in the Vehicles as part of their franchise agreements. Comp ¶41. BMW NA's knowledge of the defects in the Tires—complaints regarding which, as shown even by BMW NA's current limited document production, were extensive—is highly relevant to Plaintiff's New Jersey Consumer Fraud Act claim, which BMW NA has conceded is adequately pled and has not moved to dismiss, as well as Plaintiff's claim for breach of the duty of good faith and fair dealing.

Hon. Patty Shwartz, U.S.M.J.
August 4, 2009
Page 13

      BMW NA's insistence on the strength of its motion to strike Plaintiff's class allegations is insufficient for the reasons stated above.

**<u>Conclusion</u>**

      The parties will make themselves available for a conference (telephonic or in-person) at the Court's convenience and are otherwise willing to provide any additional information the Court may request in connection with the resolution of these two issues.

                  Respectfully,

                  *s/Christopher J. Dalton*

                  Christopher J. Dalton

CJD/dtb

cc:     All Counsel of Record (via ECF & email)